IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEITH D. BARMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-1442-RJD |
| | ) | |
| PERCY MYERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

**DALY, Magistrate Judge:[1]**

Plaintiff, Keith D. Barmore, a former inmate of the Illinois Department of Corrections ("IDOC"), brought this civil rights action under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Vienna Correctional Center ("Vienna"). After threshold review of the Complaint, Plaintiff was allowed to proceed on an Eighth Amendment deliberate indifference claim against Defendant Percy Myers. M.D. ("Dr. Meyers") for discontinuing his low bunk and back brace permits and confiscating his back brace. (Doc. 10, pp. 6, 8).

This matter is now before the Court on Dr. Myers' Motion for Summary Judgment (Doc. 39). Plaintiff filed a response, which he amended on November 21, 2025. (Docs. 42 & 45). Dr. Myers replied. (Doc. 46). Thereafter, Plaintiff moved to supplement his Amended Response with recent medical evidence. (Doc. 50). Defendant did not object. For the reasons explained below,

---

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 19).

Plaintiff's motion to supplement his Amended Response is **DENIED**. Defendant's motion for summary judgment is **GRANTED**, and this case is being **DISMISSED with prejudice**.

**<u>Fed. R. Civ. P. 56, SDIL-LR 56.1, & Plaintiff's Motion for Excusable Neglect (Doc. 50)</u>**

Dr. Myers filed a Memorandum in Support of Motion for Summary Judgment that contains a Statement of Material Facts with proper citation to the record. (Doc. 40, pp. 4-11). Plaintiff's Response (Doc. 42) and Amended Response (Doc. 45) did not comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1(b) because Plaintiff did not address Dr. Myers' assertion of facts, despite being notified of the consequences of failing to do so. (*See* Doc. 41). Thus, the Court adopts Defendant's factual allegations to the extent supported by admissible evidence. SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed"). The Court still views those facts in the light most favorable to Plaintiff.

Further, Plaintiff's Response includes a Statement of Facts citing only the Court's threshold review Order (Doc. 10) as opposed to the admissible record. (Doc. 42). Plaintiff also included in his Response a page titled "Declaration," which, however, does not comply with 28 U.S.C. § 1746 in that it is not made under penalty of perjury. (Doc. 42, p. 10). Plaintiff's Amended Response includes a Statement of Material Facts with proper citation to the record, to which Dr. Myers responded in accordance with Rule 56 and Local Rule 56.1. (Doc. 45, pp. 10-12; Doc. 46, pp. 1-3). Those facts are also adopted to the extent supported by admissible evidence.

Finally, Plaintiff filed a Motion for Excusable Neglect (Doc. 50), seeking to submit medical records that postdate his Amended Response. He argues that they show the treatment that "would have been effective" for his back pain and was "essentially mandated by accepted professional standards." (*Id.* at 2). He cites Rule 15 of the Federal Rules of Civil Procedure, which allows

supplemental pleadings to incorporate future transactions or events. Fed. R. Civ. P. 15(d). However, Rule 15(d) governs supplementation of pleadings. Because a response to a motion for summary judgment is not a pleading, Rule 15(d) does not apply in this instance. *See* Fed. R. Civ. P. 7 (providing an exclusive list of the pleadings); *see also Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (explaining that a motion to dismiss is not a pleading). In any case, even if the Court were to accept Plaintiff's supplemental filing, Plaintiff did not include an amended statement of material facts with citation to those medical records. "District courts are not obliged to scour the record looking for factual disputes," and strict application of Rule 56.1 is not an abuse of discretion. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015) (citing *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994)). Because Plaintiff's Motion for Excusable Neglect does not comply with Local Rule 56.1, it is **DENIED**.

### Findings of Facts

Dr. Myers is a physician licensed in the state of Illinois. (Doc. 40, Defendant's Statement of Material Facts, ¶ 1). In 2022, in his capacity as a traveling physician for Vienna, Dr. Myers provided direct patient contact and clinical care, including seeing patients on the "sick call line" for evaluation, diagnosis, and/or treatment. (*Id.* at ¶¶ 2-3). Dr. Myers charted all his encounters with Plaintiff in his medical records. (*Id.* at ¶ 5). Plaintiff has no medical training. (*Id.* at ¶ 6).

Before his transfer to Vienna, Plaintiff was housed at Dixon Correctional Center ("Dixon"). (Doc. 40-2, p. 10). Due to Plaintiff experiencing back pain, a nurse practitioner at Dixon prescribed him back brace and low bunk permits. (Doc. 40 at ¶ 7; Doc. 45, pp. 54-57). The permits were originally renewable annually, but they were later extended indefinitely. (Doc. 40-2, p. 11). While at Dixon, Plaintiff did not see a specialist or a physical therapist for his back and did not have an MRI. (*Id.*). A doctor at Dixon told him that continuous use of a back brace could weaken his back

and cause further problems. (Doc. 40 at ¶ 11). However, the nurse practitioner who prescribed the back brace instructed Plaintiff on how and when to properly use it. (Doc. 45, p. 10).

On April 14, 2022, Plaintiff was transferred to Vienna. (Doc. 40, ¶12). He first saw Dr. Myers on May 2, 2022. Plaintiff, 59 years old at the time, presented his low-bunk and back brace permits to Dr. Myers. He explained they were issued to him due to chronic back pain, which Plaintiff attributed to a nerve issue. (*Id.* at ¶¶ 13-15, 28; Doc. 40-2, pp. 16, 21). Dr. Myers questioned whether Plaintiff had a back issue because he did not observe recent data in the chart to support the permits. (Doc. 40, ¶ 16). He noted that he would review Plaintiff's old charts, consisting of three volumes, to obtain updated information. (Doc. 40, ¶ 16). He ordered x-rays of Plaintiff's thoracic and lumbar spine and renewed Plaintiff's back brace and a low-bunk permit for four weeks. (*Id.* at ¶¶ 16-17). Dr. Myers also told Plaintiff that, under the guidelines at Vienna, he did not meet the age, weight, and history of seizure requirements for getting a low-bunk permit. (*Id.* at ¶¶ 18-19). He recommended that Plaintiff lose weight and stated that he would decide on the renewal of the permits after getting the results of Plaintiff's imaging. (*Id.* at ¶¶ 20-21).

On May 16, 2022, Dr. Myers saw Plaintiff for a follow-up and evaluation of his imaging. (Doc. 40, ¶ 22). Plaintiff's thoracic spine x-ray showed mild degenerative disk disease, and his lumbar spine x-ray showed mild to moderate degenerative disk disease. (*Id.* at ¶ 24). According to Plaintiff, Dr. Myers also advised Plaintiff that the x-rays showed a mild scoliosis. (Doc. 40-2, p. 16). Dr. Myers informed Plaintiff that he would not renew the low-bunk and back-brace permits. (*Id.* at ¶ 31). According to Plaintiff, Dr. Myers noted that the mild findings did not justify the back brace and that "everybody has a certain crook" in their back. (Doc. 40-2, p. 16). Dr. Myers also informed Plaintiff that the long-term use of a back brace is not beneficial for his mild to moderate

degenerative disk disease. (*Id.* at ¶ 32). He further explained to Plaintiff that the results of his imaging did not meet the criteria for a low-bunk permit. (Doc. 40, ¶ 29).

Plaintiff testified that he insisted he was not lying about his back pain and that he suspected he had a nerve issue that was not showing up on the imaging. (Doc. 40-2, p. 16). He asked to be sent to a specialist, but Dr. Myers denied Plaintiff's request. (*Id.*). Plaintiff also testified that he asked Dr. Myers, "if you take my back brace, what am I going to have?", but Dr. Myers was not willing to hear him because he had a "personal thing with back braces." (*Id.* at ¶¶ 16-17). According to Dr. Myers' Declaration, a permit for a back brace would typically be issued to an individual in custody recovering from back surgery, if recommended by a surgeon, or to an individual with a recent back injury for which the brace could assist with short-term healing. (Doc. 40, ¶ 33). Based on his medical judgment, the standard of care for treating back pain is not the long-term use of a back brace, but rather active rehabilitation to achieve the best outcomes. (*Id.* at ¶ 34). Plaintiff does not dispute that losing weight would help his back pain. (*Id.* at ¶ 38).

On June 7, 2022, Plaintiff saw a nurse practitioner regarding his knee, foot, and shoulder. (Doc. 40, ¶ 39). The nurse practitioner charted that Plaintiff needed to lose weight and that Plaintiff requested an MRI of his right ankle, but the nurse practitioner did not think it was needed. (*Id.*). The nurse practitioner's plan was for Plaintiff to follow up with Dr. Myers for a records review. (*Id.*). Plaintiff's medical records show that the nurse practitioner issued Plaintiff a low-bunk permit for one year due to Plaintiff's knee and Achilles tendon issues. (*Id.* at ¶¶ 40-41). Plaintiff was never moved from the bottom bunk while at Vienna. (*Id.* at ¶¶ 42-43).

On June 13, 2022, Dr. Myers saw Plaintiff for a follow-up of his right knee x-ray and for review of records. (Doc. 40 at ¶ 44). Plaintiff requested an MRI of his back. (*Id.* at ¶ 45). Dr. Myers discussed again with Plaintiff the results of his spinal x-rays that showed mild dextroscoliosis and

mild to moderate degenerative disk disease. (*Id.* at ¶ 46). On physical examination, Dr. Myers

observed that Plaintiff had a normal gait and normal motor and sensory examinations. (*Id.* at ¶ 47).

Dr. Myers discussed with Plaintiff his assessment that Plaintiff's height of 5'7" and weight of 248

pounds was a culprit of his back pain. (*Id.* at ¶ 48). Dr. Myers also discussed with Plaintiff that no

x-ray showed any severe changes and that, given the normal physical examinations and unchanged

x-rays, there was no need for an MRI. (*Id.*). Dr. Myers advised Plaintiff of his treatment plan for

Plaintiff to lose weight and take medications as prescribed, which included Naproxen 500 mg for

his pain and muscle rub  (*Id.* at ¶¶ 17, 49). Dr. Myers did not see Plaintiff for his back pain after

June 13, 2022. (*Id.* at ¶ 51). Plaintiff's back brace was confiscated on August 4, 2022. (*Id.* at ¶ 53).

Between August 4, 2022, and October 24, 2023, Plaintiff was seen in nurse sick call for back pain

only twice, on April 6, 2023, and August 23, 2023. (*Id.* at ¶ 61).[2]

On April 21, 2023, Plaintiff saw a doctor for his back, who prescribed nerve pain

medication, but did not issue Plaintiff a back brace and did not order an MRI (Doc. 40, ¶¶ 54-57).

Plaintiff stopped taking the nerve pain medication after three days because it affected his memory.

(*Id.* at ¶ 58). On May 26, 2023, Plaintiff saw a nurse practitioner, who ordered a back brace, which

Plaintiff did not receive until October 24, 2023. (*Id.* at ¶¶ 59-60).

---

[2] At his deposition, Plaintiff testified that he "might have seen [Dr. Myers] . . . maybe one more time,"
regarding his back after the June 2022, but could not recall when. (Doc. 40-2, p. 22). He further testified
that he submitted sick calls every time he experienced back pain after his back brace was confiscated but
could not confirm that this happened on April 6, 2023, and August 23, 2023, as reflected in his medical
records. (*Id.*). Plaintiff's testimony is inconclusive as to the last time he saw Dr. Myers and the times that
he submitted a sick call for his back pain. Plaintiff also filed a Declaration stating that he had to take days
off from work for his back pain and that he had "his share of back pain at work sites." (Doc. 45, pp. 10-11).
The cited record, however, shows that he took days off between August 23 and August 30 of 2023. (Doc.
45, pp. 144-45). Further, Plaintiff did not respond to Defendant's Statement of Material Facts, and the
relevant factual allegations as to the last day Plaintiff saw Dr. Myers for his back pain and the relevant sick
call requests are properly supported by the cited record. Accordingly, Plaintiff's testimony and Declaration
are insufficient to create a genuine dispute on these issues.

While at Vienna, Plaintiff worked as a porter for two to three months, a chaplain's clerk for three to six months, and a cook for six months. (Doc. 40 at ¶¶ 64-65). As a porter, Plaintiff swept and mopped the floor five days a week. (*Id.* at ¶ 66). As a chaplain's clerk, Plaintiff worked eight hours a day, five days a week. (*Id.* at ¶ 67). As a cook, Plaintiff worked three to four hours a day, five days a week. (*Id.* at ¶ 68). Aside from one incident on August 23, 2023, where Plaintiff injured himself and requested a lay-in from his job, Plaintiff was able to perform his jobs. (Id. at ¶ 69). Plaintiff, however, attested that "he had his share of back pain at the work sites" and that Naproxen was ineffective for his back pain. (Doc. 45, p. 11; Doc. 40-2, p. 23).

Plaintiff testified that on April 4, 2024, after his release from IDOC, he was diagnosed with a leg length discrepancy (right leg being ¼ inch shorter) that has caused cartilage deterioration at his L4 and L5 vertebrae. (Doc. 40-2, pp. 5-6; Doc. 45, p. 11). According to his medical records, from about May 2024 to December 2024, Plaintiff went to physical therapy for his back. (*Id.* at ¶¶ 72-74). Plaintiff currently takes Tylenol 500 mg for his back and also applies Voltaren gel. (*Id.* at ¶ 75). Plaintiff also testified that no doctor has ever told him that not wearing a back brace could harm him. (Doc. 40 at ¶ 63). Further, Plaintiff's doctors advised him that core strengthening would help his back pain and instructed him to discontinue the use of Naproxen because of a kidney cyst. (Doc. 45, p. 10; Doc. 40 at ¶ 71).[3]

According to Plaintiff's records from the Department of Veterans Affairs, Plaintiff had a complete MRI Lumbar Spine without contrast on June 5, 2024. (Doc. 45, pp. 11-12). Plaintiff received lumbar epidural steroid injections on both the right and left sides on September 20, 2024,

---

[3] Defendant also points to Plaintiff's deposition for the proposition that his doctors recommended that he lose weight. (Doc. 40, ¶ 70). While this statement is true, a review of Plaintiff's deposition does not show that this recommendation was related to Plaintiff's back pain treatment. (Doc. 40-2, p. 8).

and again on July 10, 2025. (*Id.*). Plaintiff also has an RFD Orthopedics consultation scheduled for January 6, 2026. (*Id.*). Plaintiff attested that a lumbar back brace with a lumbar pad for L4 L5 disc bulge provides pain relief and spinal support by stabilizing weakened structures, reducing pressure through compression, shifting load to the abdominal region, decompressing the spine, and reducing nerve root irritation. (*Id.*).

Dr. Myers attested that degenerative disk disease is a condition that occurs when your spinal disks wear down. (Doc. 40 at ¶ 25). Spinal disks are rubbery cushions between your vertebrae. (*Id.*). Dr. Myers opined that everyone's spinal disks degenerate over time as a natural part of aging, and that almost everyone has some disk degeneration after age 40. (*Id.* at ¶¶ 26-27). Dr. Myers further attested that, based on the Vienna guidelines and his medical judgment, Plaintiff's mild to moderate degenerative disk disease did not meet the criteria for a low-bunk permit, and the long-term use of a back brace was not medically necessary, appropriate, or beneficial to treat Plaintiff's back pain. (*Id.* at ¶ 51).

### Summary Judgment Standard

Summary judgment is appropriate only when the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Ruffin- Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable

Page **8** of **15**

jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**<u>Discussion</u>**

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Brown v. Osmundson*, 38 F.4th 545, 549-50 (7th Cir. 2022) (internal citations omitted). To succeed on his deliberate indifference claims, Plaintiff must "provide evidence, either direct or circumstantial," establishing that "he had an objectively serious medical need," which the defendants knew of but consciously disregarded. *Id.* at 550. Mere negligence, civil objective recklessness, or "medical malpractice do[] not become a constitutional violation merely because the victim is a prisoner." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Rather, the defendant must have exhibited a conduct that approaches "a total unconcern for the prisoner's welfare in the face of serious risks" and is akin to criminal recklessness. *Brown*, 38 F.4th at 550; *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Further, "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* Deliberate indifference implies that a defendant's medical judgment

was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 395, 396 (7th Cir. 2006); *Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"); *See Berry v. Lutsey*, 780 F. App'x 365, 369 (7th Cir. 2019) (exercise of medical judgment as to the duration for reevaluation of an inmate's scoliosis, after full evaluation of the inmate's condition, was an exercise of medical judgment that negated claim of deliberate indifference). Inmates cannot "demand specific care" or "the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

Yet, "receipt of some medical care does not automatically defeat a claim of deliberate indifference" and persistence "in a course of treatment known to be ineffective" may support a finding of reckless disregard of an inmate's serious medical condition. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (citation omitted). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal citation omitted). Further, a provider's "[f]ailure to provide necessary relief and delaying access to a qualified specialist can lead to prolongation of pain" and support a deliberate indifference claim. *Thomas v. Martija*, 991 F.3d 763, 771 (7th Cir. 2021) (citing *Goodloe v. Sood*, 947 F.3d 1026, 1032 (7th Cir. 2020); *Petties*, 836 F.3d at 731–32; *Conley*, 796 F.3d at 749). Yet, a mere delay in treatment is insufficient to

show deliberate indifference. *Id.* at 769. Rather, the Court should look on "how serious the condition in question was, how easy it would have been to treat it, and whether it exacerbated an injury or unnecessarily prolonged pain." *Id.* (quoting *Petties*, 836 F.3d at 730–31). "Delay need not be extreme; failing to provide a very easy treatment or accommodation can suffice, if unnecessary suffering resulted. *Id.* (citing *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004)).

In *Thomas*, the Seventh Circuit found that a prison doctor's delay of six or ten months, respectively, to respond to an inmate's requests for the renewal of his low-bunk permit and for a referral to an orthopedic specialist without any explanation for the inaction could allow an inference that the prison doctor "consciously and needlessly delayed both measures." *Thomas*, 991 F.3d at 769. In *Berry*, on the other hand, the Seventh Circuit affirmed the grant of summary judgment in favor of prison medical providers to an inmate's claims for deliberate indifference to his scoliosis-related pain and need for accommodations. 780 F. App'x at 369–70. There, a medical provider at a prior facility had prescribed accommodation for the inmate's back pain, including low-bunk and back-brace permits and special shoes. *Id.* at 367. After the inmate's transfer to a new facility, the doctor there temporarily continued those accommodations and ordered a follow-up appointment in three months. *Id.* At the follow-up appointment, the doctor prescribed a back brace but discontinued the special shoes and the low-bunk permit as the inmate's physical examination showed that he no longer needed them. *Id.* The doctor noted that a six-month reevaluation was proper. Because the prison was temporarily without a full-time physician, the inmate did not see a doctor for his back for another six months. He was treated by the nurses, who also denied his renewed requests for additional accommodation. *Id.* at 368.

The Seventh Circuit found that the six-month delay in doctors' visits was based on the doctor's determination that a six-month reevaluation was proper. *Id.* at 369. Likewise, the denial

of the additional accommodations for his back pain was also "based on the absence of a medical need (such as his normal or steady gait) or [the] assessment that any asserted need did not outweigh security concerns." *Id.* Because both were based on the exercise of professional judgment, and there was no evidence of substantial departure from accepted professional standards, the court held that the inmate could not prevail on his deliberate indifference claim. *Id.*

This case is similar to *Berry*. Dr. Myers does not dispute that Plaintiff had an objectively serious medical need relating to his back pain. He argues, however, that Plaintiff cannot establish the subjective component of a deliberate indifference claim because Dr. Myers' decision not to renew the back brace and low bunk permit was the exercise of professional judgment. He further argues that Plaintiff did not suffer any harm because of that decision. Plaintiff, on the other hand, counters that Dr. Myers was deliberately indifferent to his back pain because he discontinued Plaintiff's lower bunk permit and back brace permit without referring Plaintiff to a specialist or ordering an MRI. As explained below, the record does not support that inference.

First, the record shows, and Plaintiff does not essentially dispute, that Dr. Myers' denial of the back brace permit was the exercise of professional judgment. Dr. Myers initially renewed Plaintiff's low-bunk and back brace permits for four weeks and ordered additional imaging to confirm his need for those accommodations. As with the doctor in *Berry,* Dr. Myers relied on the objective x-ray findings and Plaintiff's physical examination to discontinue the back brace permit. Dr. Myers attested that he did not prescribe the back brace because it is not beneficial for mild to moderate degenerative disk disease, and he had concerns over its prolonged use by Plaintiff. Plaintiff testified that Dr. Myers denied his request for a back brace because he had a "personal thing" against them, which again shows a professional judgment as opposed to animosity towards Plaintiff or disregard of his back pain.

Page **12** of **15**

Further, the record does not support an inference that Dr. Myers' exercise of professional judgment significantly departed from professional standards. Plaintiff admitted that another doctor had previously cautioned him against the continuous use of a back brace because it could weaken the back muscles. Further, the doctor who saw Plaintiff in April 2023 also did not prescribe Plaintiff a back brace but opted for nerve medication to address Plaintiff's back pain complaints. Accordingly, no reasonable jury could find that Dr. Myers' decision not to issue Plaintiff a back-brace permit "deviate[d] so substantially from accepted professional judgment that no reasonable physician would reach the same judgment." *See Thomas*, 991 F.3d at 772.

Likewise, the record supports the conclusion that the denial of an MRI and referral to a specialist was also an exercise of professional judgment that negates a finding of deliberate indifference. Dr. Meyers ordered x-rays which showed mild to moderate degenerative disk disease and mild dextroscoliosis. As the medical provider in *Berry*, Dr. Myers' decision not to order an MRI or issue a referral to a specialist at that time was based on those objective findings. Plaintiff last saw Dr. Meyers for his back pain on June 13, 2022, when he renewed his request for accommodations, imaging, and referral to a specialist. Dr. Myers physically examined Plaintiff and noticed a normal gait and normal motor and sensory examinations. Dr. Myers discussed with Plaintiff that no x-ray showed any severe changes and that, given the normal physical examinations and unchanged x-rays, there was no need for an MRI or referral. He recommended that Plaintiff lose weight and treat his back pain with the prescribed medication, which included Naproxen 500 mg and muscle rub. This is again an exercise of professional judgment.

Plaintiff argues that had Dr. Myers referred Plaintiff to a specialist, he would have discovered Plaintiff's leg length discrepancy, which Plaintiff argues is the cause of his back pain. Even assuming that Plaintiff had established that causal connection between his length discrepancy

and his back pain—which he has not—there is no indication that Dr. Myers' decision not to order an MRI or refer Plaintiff to a specialist, after having treated Plaintiff for less than three months and given Plaintiff's objective findings, substantially departed "from accepted professional judgment that no reasonable physician would reach the same judgment." *See Thomas*, 991 F.3d at 772 (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). There is no dispute that no other IDOC medical provider ordered MRIs for Plaintiff or referred him to a specialist. The fact that a different provider, whom Plaintiff saw more than two years later and after his release from IDOC, ordered an MRI and steroid injections and allowed Plaintiff to use a back brace temporarily, is insufficient to show deliberate indifference on Dr. Myers' behalf. Notably, Dr. Myers treated Plaintiff for his back pain for less than three months. Given the mild to moderate x-ray findings, Plaintiff's physical examination, and Plaintiff's prior prolonged use of a back brace, it was not unreasonable for Dr. Myers to begin with a more conservative treatment plan before engaging in additional testing and referral to a specialist.

Notably, Dr. Myers never treated Plaintiff after August 2022, when the back brace was confiscated. Plaintiff did not submit a sick call for back pain until more than seven months later, in April 2023, at which time he saw a different doctor. Plaintiff testified that he continued to experience pain. Still, there is no indication that Plaintiff advised Dr. Myers of such continuous back pain and that Dr. Myers persisted with the same ineffective treatment. *See Thomas*, 991 F.3d at 772 (noting that persistence in ineffective treatment does not amount to deliberate indifference unless the doctor was subjectively aware that the treatment plan was ineffective—"[i]t is not enough that the plaintiff simply believes the medical treatment was ineffective."). By April 2023, when Plaintiff filed the first sick-call for his back pain, a different doctor examined Plaintiff and recommended a nerve medication, not a back brace, further imaging, or referral to a specialist,

which Plaintiff argues was the standard of care for his condition. Therefore, the record does not support a finding that Dr. Myers was deliberately indifferent to Plaintiff's back pain when he denied him a back brace permit, MRI testing, and referral to a specialist.

Finally, Plaintiff cannot establish deliberate indifference as to Dr. Myers' denial of his request for a low-bunk permit. The record shows that a nurse issued Plaintiff a low-bunk permit in June 2022. Plaintiff never had to move to an upper bunk during his time at Vienna. Accordingly, Plaintiff did not suffer any harm as a result of Dr. Myers' denial of a low-bunk permit.

### Conclusion

For these reasons, Defendant's Motion for Summary Judgment (Doc. 39) is **GRANTED.** This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED: August 5, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**